UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

Christopher Robinson,

                *Petitioner*,

       -*against*-

Robert Morton,

                *Respondent*.

----------------------------------X

**MEMORANDUM & ORDER**

18-cv-3214 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

         Petitioner Christopher Robinson ("Petitioner"),
proceeding *pro se*, filed this amended petition for a writ of
*habeas corpus* on January 3, 2020, challenging the
constitutionality of his March 3, 2013 state court conviction in
the Supreme Court of Nassau County, for robbery in the first
degree, burglary in the first degree, robbery in the second
degree, criminal possession of a weapon in the second degree,
burglary in the second degree, criminal possession of a weapon
in the third degree, and assault in the second degree.  (ECF No.
16, Amended Petition for Writ of *Habeas Corpus* ("Am. Pet.").)
On April 17, 2013, Robinson was sentenced to concurrent terms of
imprisonment, aggregating twelve years, followed by five years
of post-release supervision.  (ECF No. 5-17, Sentencing Hearing
Minutes at 12-13.)  The petitioner asserts that the conviction
violates his constitutional rights because: (1) the suggestive

show-up[1] identification procedures conducted in his case were impermissible and contrary to Supreme Court precedent in *United States v. Wade*, 388 U.S. 218 (1967) and *Foster v. California*, 394 U.S. 440 (1969); (2) trial counsel failed to raise the issues of perjury and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (3) petitioner received ineffective assistance of trial counsel; (4) petitioner received ineffective assistance of appellate counsel; and (5) trial counsel was ineffective in notifying petitioner of a favorable plea offer.  (Am. Pet. at 5-14; 40.)  Robert Morton, the nominal respondent ("Respondent"), opposes the motion as not cognizable, procedurally barred, and without merit.  (*See generally,* ECF No. 19, Memorandum in Opposition to Amended Petition for Writ of *Habeas Corpus* ("Opp.").)  The court agrees with Respondent.  For the foregoing reasons, the petition is respectfully denied in its entirety.

## BACKGROUND

### I.   Factual Background

Petitioner was convicted in connection with a burglary committed on the evening of December 27, 2011.  (ECF No. 5-16, Trial Transcript, 1647-1654.)[2]  Wallace Jackson and Tanajia

---

[1] "A show-up is an identification procedure in which, unlike in a lineup or photo array, the suspect is presented singly to the crime victim." Michael D. Cicchini & Joseph G. Easton, Reforming the Law on Show-Up Identifications, 100 J. Crim. L. & Criminology 381 (2010).

[2] The trial transcript is available on the docket at ECF Nos. 5-3, 5-4, 5-5, 5-6, 5-7, 5-8, 5-9, 5-10, 5-11, 5-12, 5-13, 5-14, 5-15, 5-16, and

Levins, the two victims of the crime, were in Jackson's second-floor bedroom watching a basketball game when Jackson heard noise coming from downstairs.  (ECF No. 5-9, Trial Transcript, 687-688.)  Jackson called his sister, Denise, to ask if she was home, before he started walking down the stairs.  (*Id.* at 688-689.)  Jackson was on the phone with his sister when he saw someone on the first floor of the house.  (*Id.* at 689-690.)  Jackson told his sister there was someone in the house and that she should call the police.  (*Id.* at 690.)  Jackson then ran up the stairs to his room and locked the door as he heard someone follow him up the stairs.  (*Id.* at 690-691.)

Petitioner and co-defendant Theodore Jerry began banging and kicking on Jackson's locked bedroom door.  (*Id.* at 691.)  After they burst through the door, Petitioner and Jerry told Jackson and Levins to lay on the floor, face down.  (*Id.* at 695.)  Petitioner and Jerry then began ransacking the room, flipping boxes, opening drawers, and demanding money from Jackson.  (*Id.* at 697.)  Petitioner struck Jackson in the head with his weapon multiple times, while Jerry held Levins at gunpoint.  (*Id.* at 699-701.)  Petitioner ordered Jackson to empty his pockets, taking $1,130 and to surrender his earrings.  (*Id.* at 697-699.)  Jerry and Petitioner covered both Jackson and

---

continuously paginated from pages 1 – 1660. The court will hereinafter reference the transcript by the caption "Tr."

Levins with a mattress before heading downstairs and leaving the house. (*Id.* 704-705.)

Minutes after responding to the 911 call from Denise (Jackson's sister), Police Officers Vincent Conlon and Gerald Estime saw the Petitioner and Jerry leaving the house. (ECF No. 5-7, 358; 361-390.) Officer Estime began a pursuit on foot, while Officer Conlon remained at the house. (*Id.* 361-390.) Officer Conlon transmitted information via radio about the incident from his cruiser and spoke briefly to Jackson and Levins outside the home. (*Id.* 390-391.) Once apprehended, Petitioner was found to be in possession of the same amount of money that was stolen and was identified as the owner of the gun that had been tossed while fleeing the scene. (ECF No. 5-8, 641-648.) Jerry was also apprehended, and police found a loaded gun as well as Levins' cell phone on him. (*Id.* 519-531.)

After Petitioner and Jerry were apprehended, the police conducted a showup, which took place thirty minutes after police arrived at the scene of the crime. (ECF No. 5-7, 392-393; ECF No. 5-8, 484.) An officer brought Jackson to where Petitioner had been arrested and Jackson identified Petitioner as one of the men who broke into his home. (ECF No. 5-9, 714-716.) Officer Conlon brought Levins to the scene of the arrest, but she did not make an identification because it was too bright. (ECF No. 5-8, 472-476; 485.) Shortly thereafter,

4

Officer Conlon brought Levins back to the location where
Petitioner was arrested and Levins was able to identify
Petitioner while he was handcuffed, standing next to a police
car.  (ECF No. 5-8, 472-485; ECF No. 5-11, 1078-1081.)

      Following a jury trial in Nassau County Supreme Court,
Petitioner was convicted on March 3, 2013 of robbery in the
first degree, burglary in the first degree, robbery in the
second degree, criminal possession of a weapon in the second
degree, burglary in the second degree, criminal possession of a
weapon in the third degree, and assault in the second degree.
(ECF No. 5-16, 1647-1654.)  On April 17, 2013, he was sentenced,
as a repeat violent felony offender, to concurrent terms of
imprisonment aggregating twelve years, followed by five years of
post-release supervision.  (ECF No. 5-17, Sentencing Hearing
Minutes at 12.)

## II.  The Direct Appeal

      On March 24, 2015, Petitioner appealed his verdict to
the New York Supreme Court, Appellate Division, Second
Department ("Appellate Division").  (*See* ECF No. 5-18, Brief for
Appellant.)  Petitioner alleged the following: (1) he was denied
due process and deprived of a fair trial because the prosecution
failed to disclose, prior to the suppression hearing, that one
of the complainants had seen, but failed to identify Petitioner
during the first of two showup procedures; (2) the trial court

erred in failing to reopen the *Wade* hearing; (3) the prosecution improperly shifted the burden during summation; (4) testimony by a police witness constituted improper bolstering; (5) a police witness committed perjury and the prosecutor suborned the prejured testimony; (6) the verdict was against the weight of the of the evidence; and (7) certain counts in the indictment were multiplicitious.  (*See Id.* at 1-3.)

On April 6, 2016, the Appellate Division affirmed the judgment of the Nassau County Supreme Court.  (ECF No. 5-21, Appellate Division Decision.)  The Appellate Division ruled that Petitioner improperly relied on trial testimony to challenge the Nassau County Supreme Court's determination denying suppression of the showup identification evidence.  (*Id.* at 1.)  Petitioner contended that he was denied due process and deprived of a fair trial because the prosecution failed to disclose, prior to the suppression hearing, that one of the complainants failed to identify the petitioner during the first of the two showup procedures.  (*Id.* at 1-2.)  The Appellate Division determined that the evidence of Petitioner's guilt, even without the testimony of the victim's identification at the second showup, was "overwhelming," and thus the error was harmless beyond a reasonable doubt because "there was no reasonable possibility that the error might have contributed to the defendant's conviction."  (*Id.* at 2.)

6

As to Petitioner's claim that his trial counsel was ineffective because he failed to introduce Tanajia Levins' grand jury testimony into evidence, which allegedly would have led to a mistrial, the Appellate Division ruled that a mistrial was not warranted and that Petitioner failed to preserve this argument for appellate review.  (*Id.*)  The Appellate Division further held that Petitioner failed to preserve for appellate review the following arguments: that the trial court erred in failing to re-open the *Wade* hearing; that certain testimony by a police witness constituted improper bolstering; that a police witness committed perjury and that the prosecutor suborned it; and that certain counts in the indictment were multiplicitous.  (*Id.* at 1-3.)

On May 3, 2016, Petitioner moved for leave to appeal to the New York Court of Appeals ("Court of Appeals"), where he raised six grounds for review by the court and requested an oral hearing on his application via telephone.  (*See* ECF No. 5-22, Criminal Leave Application.)  On September 26, 2016, the Court of Appeals denied leave to appeal.  (*See* ECF No. 5-24, Order Denying Leave.)

## III.   **Writ of Error *Coram Nobis* Motion**

On September 5, 2017, Petitioner filed a *pro se* motion for a writ of error *coram nobis* in the Appellate Division, alleging that he was denied effective assistance of appellate

7

counsel.  (*See* ECF No. 5-25, Notice of Motion.)  Petitioner argued that his appellate counsel was ineffective because he failed to raise the following arguments against Petitioner's trial counsel: failure to re-open the *Wade* hearing, (*Id.* ¶¶ 11-16), failing to call Levins as a witness at the *Wade* hearing, (*Id.* ¶¶ 17-22), and failing to preserve for appellate review certain "trial errors," which had the cumulative effect of denying Petitioner a fair trial.  (*Id.* ¶¶ 23-24.)  On January 24, 2018, the Appellate Division denied Petitioner's ineffective assistance of counsel claim.  (*See* ECF No. 5-28, Decision and Order.)  On April 30, 2018, the Court of Appeals denied leave to appeal from the Appellate Division's decision.  (*See* ECF No. 5-30, Order Denying Leave.)

## IV.  Writ of *Habeas Corpus*

On May 30, 2018, Petitioner filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254.  (*See generally* Pet.)  Petitioner asserted his constitutional rights were violated because: (1) he was denied due process in violation of his Fifth and Fourteenth Amendment rights because of police and prosecutorial misconduct, *Brady* violations, and C.P.L. § 710.30 violations; (2) he was denied effective assistance of counsel in violation of the Sixth Amendment; and (3) the police lacked probable cause to arrest Petitioner in violation of the Fourth Amendment.  (*Id.*)  Respondent opposed this motion.  (*See* ECF No.

5, Memorandum of Law in Opposition.)  On September 27, 2018, Petitioner requested that this court hold the *habeas corpus* proceedings in abeyance while he attempted to raise two new claims related to his ineffective assistance of counsel claim and prosecutorial misconduct claim in state court.  (*See* ECF No. 4, Motion to Compel the Court to Issue an Order Holding the Petition for *Habeas Corpus* in Abeyance.)  On May 1, 2019, the Petitioner's request for a stay was granted and the Court directed Petitioner to file his motion under § 440.10 in state court.  (Dkt. Order, 5/1/2019.)

## V.   440.10 Motion

In January 2019, Petitioner filed a motion to vacate his conviction and sentence pursuant to C.P.L. § 440.10 on three grounds.  (*See* ECF No. 19-1.)  Specifically, Petitioner contended that: (1) his due process rights were violated because of police and prosecutorial misconduct, *Brady* violations, and C.P.L. § 710.30 violations, (*Id*. at 7-9); (2) Petitioner's trial counsel failed to consult with Petitioner regarding a favorable plea offer prior to rejecting said offer, (*Id*. at 9-10); and (3) Petitioner's counsel was ineffective after the victim testified in a way defendant believed to be inconsistent with her grand jury testimony and counsel's sole action was to move for the preclusion of the victim's in-court identification. (*Id*. at 6-8.)  Petitioner attempted to support his second

9

contention regarding the plea offer with affidavits from his brother, mother, and friend, all of whom claimed that they heard Petitioner's trial counsel reject the plea offer without consulting with Petitioner.  (*See* ECF No. 19-2. at 20-22.)

Respondent opposed the § 440.10 motion, arguing that two of the Petitioner's claims were procedurally barred and all lacked merit.  (ECF No. 19-3, Opposition at ¶ 25.)  Respondent argued that although defense counsel declined to submit an affirmation against his former client, defense counsel had not rejected any plea offer without consulting his client.  (*Id.* at ¶ 26.)  Further, Assistant District Attorney Brian Lee, who tried the case, affirmed that he would not have authorized the alleged plea offer to defendant.  (*Id.*)

On March 22, 2019, the Nassau County Supreme Court denied Petitioner's motion.  (*See generally* ECF No. 19-17, Decision and Order.)  The court held Petitioner had not establish he was denied effective assistance of counsel and that he was procedurally barred from pursuing claims already raised pursuant to C.P.L. § 440.10 (2)(a).  (*Id.* at 3.)  On August 26, 2019, the Appellate Division denied leave to appeal.  (*See* ECF No. 19-35, Decision and Order on Application.)  On November 14, 2019, the Court of Appeals dismissed Petitioner's attempt to appeal the Appellate Division's denial.  (*See* ECF No. 19-37, Order Dismissing Leave.)

10

**VI.    Amended Writ of *Habeas Corpus***

On January 3, 2020, Petitioner filed the instant amended petition for habeas relief under U.S.C. § 2554.  (*See generally* Am. Pet.)  The Petitioner asserts his conviction violated his constitutional rights because: (1) the suggestive show-up identification procedures conducted in his case were impermissible and contrary to Supreme Court precedent in *United States v. Wade*, 388 U.S. 218 (1967) and *Foster v. California*, 394 U.S. 440 (1969); (2) trial counsel failed to raise the issues of perjury and a violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (3) petitioner received ineffective assistance of trial counsel; (4) petitioner received ineffective assistance of appellate counsel; and (5) trial counsel was ineffective in notifying petitioner of a favorable plea offer.  (Am. Pet. at 5-14; 40.)  On August 27, 2020, respondent filed an affidavit and memorandum of law in opposition to the petition, arguing that petitioner's claims are procedurally barred and entirely without merit.  (*See generally* Opp.)  Petitioner replied to Respondent's Opposition on September 23, 2020.  (ECF No. 20, Petitioner's Reply.)

## <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of *habeas corpus* by a person in

11

custody pursuant to a state court judgment may only be brought on the grounds that his or her custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A *habeas* petitioner is required to show that the state court decision, having been adjudicated on the merits, is either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289 (2013).

For the purposes of federal *habeas* review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412-13. Factual determinations made by the state court are presumed to be correct, and the petitioner bears the

burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

State procedural default or failure to exhaust state court remedies will operate as a bar to review unless the petitioner can (1) establish cause for his default and actual prejudice resulting from the alleged violation of federal law, or (2) demonstrate that the failure to consider the petitioner's claims would result in a fundamental miscarriage of justice. *See Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

A petitioner may fulfill the cause requirement in two related ways. First, the petitioner can demonstrate that "some objective factor, external to Petitioner's defense, interfered with his ability to comply with the state's procedural rule." *Gutierrez*, 702 F.3d at 111 (citing *McClesky v. Zant*, 499 U.S. 467, 493 (1991)). Alternatively, the petitioner can establish cause by demonstrating futility — specifically, that "prior state case law has consistently rejected a particular constitutional claim." *Id.* (citing *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006)). To establish prejudice, the petitioner must demonstrate that the alleged error resulted in "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*,

316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks and citation omitted).

Even if the petitioner is unable to establish cause and prejudice, the court may excuse the procedural default if petitioner can show that a fundamental miscarriage of justice would result, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citations omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (alteration in original, internal quotation marks omitted).

In reviewing the instant petition, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that courts should review *pro se habeas* petitions with a lenient eye). Consequently, the court is obliged to interpret petitioner's pleadings as raising the strongest arguments they suggest. *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *Martin v.*

*United States,* 834 F. Supp. 2d 115, 119 (E.D.N.Y. 2011) (citing *Williams,* 722 F.2d at 1050).

## DISCUSSION

### I.   Suggestive Show-Up Identification

Petitioner's claim that the showup was impermissible and contrary to Supreme Court precedent in *United States v. Wade*, 388 U.S. 218 (1967), and *Foster v. California*, 394 U.S. 440 (1969), fails as the state appellate court's determination on independent and adequate state law grounds bars review. "[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts." *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). In *Harris v. Reed*, the Supreme Court held that a court shall not consider an issue of federal law on direct review of a state court judgment in federal *habeas corpus* proceedings pursuant to 28 U.S.C. § 2254 if that judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision. *Harris v. Reed*, 489 U.S. 255, 261-62 (1989).

On direct appeal, the Appellate Division found that Petitioner was not denied a fair trial despite the People's failure to disclose, prior to the suppression hearing, that one of the victims had seen him, but failed to identify Petitioner during the first of two showup procedures. (*See* ECF No. 5-21 at

15

1-2.)  The Appellate Division held that the People had violated
the provisions of C.P.L. 710.30 by not providing Petitioner with
notice of the first showup procedure, but reasoned that the
violation was harmless beyond a reasonable doubt, because the
evidence of Petitioner's guilt, without the testimony of the
victim's identification at the second showup, was overwhelming.
(*Id.*; citing *People v. Lopez*, 84 N.Y.S.2d 425.)  Accordingly,
petitioner's claim with respect to the suggestiveness of the
showup was decided on independent and adequate state law
grounds, and this court is barred from reviewing it in the
instant habeas action.

        Petitioner also asserted that the trial court erred in
failing to re-open the *Wade* hearing or declaring a mistrial due
to the suggestiveness of the showup identification.  (*Id.*)  The
Appellate Division rejected petitioner's claim, ruling that "the
defendant 'failed to demonstrate that he discovered additional
facts, not discoverable with reasonable diligence before the
determination of the motion, that would have affected the
court's ultimate determination of the suppression motion.'"
(*Id.*) (citing *People v. Ekwegbalu*, 15 N.Y.S.3d 847; *People v.
Clark*, 88 N.Y.S.2d 552, 555; *People v. Fuentes*, 53 N.Y.S.2d 892,
894; CPL § 710.40[4].)  Based on the Appellate Division's
determination, this court is procedurally barred from reviewing
the suggestiveness of the showup claim.

16

Even if the suggestive showup claim were reviewable by this court, it is meritless.  Evaluating a pretrial identification procedure requires a two-step analysis.  (*See United States v. Wong*, 40 F.3d 1347, 1359 (2d Cir. 1994.)  Under the first prong, a court must determine whether the identification process was impermissibly suggestive.  (*Id.*)  The second prong requires the court to determine if the identification process was impermissibly suggestive, whether it was so suggestive as to raise a very substantial likelihood of irreparable misidentification.  (*Id.*)  In sum, the identification evidence will be admissible if the procedures were not suggestive, or the identification has an independent basis.  (*See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Neil v. Biggers*, 409 U.S. 188, 199 (1972).)

The court looks generally to the factors set out in *Biggers* in determining whether an identification is reliable including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; (5) and the length of time between the crime and the confrontation.  (*Id.*)  The Petitioner argues that after weighing these factors, the identification of Ms. Lewis and Mr. Jackson have no independent reliability.  (*See* Am. Pet. at 20.)

17

Specifically, Petitioner contends that because he was handcuffed, surrounded by as many as six uniform police officers, and placed next to a marked police vehicle and standing in a spotlight, the show-up procedure was unduly suggestive. (Am. Pet. at 18.) Officer Conlon first brought Ms. Levins to Petitioner's location where he was arrested, but Conlon testified the location was too chaotic and that it was too bright for Ms. Levins to make an identification. (ECF No. 5-8, Tr. 472-476; 485.) It was only shortly after when the second show-up occurred that both victims were able to see clearly and identify the Petitioner. (*Id.*) Showup procedures are not rendered unduly suggestive as a matter of law merely because a defendant is handcuffed and surrounded by police. *See United States v. Bautista*, 23 F.3d 726, 730 (2d Cir.1994) ("The fact that the suspects were handcuffed, in the custody of law enforcement officers, and illuminated by flashlights also did not render the pretrial identification procedure unnecessarily suggestive.").

Moreover, the showup identification procedure was conducted in relatively close temporal and geographic proximity to the crime. Officer Leone chased Petitioner from the scene of the crime, and Petitioner threw his gun on the ground as he fled. (ECF No. 5-10, 951-959.) Officer Leone was able to apprehend Petitioner a few blocks away from the victim's home as

18

Petitioner tried to clear a fence and Officer Leone recovered a "bundle of cash" from Petitioner, as well as a phone, hat, and gloves. (*Id.* 951-965.) Petitioner's consciousness of guilt demonstrated by his attempt to flee and fight the police strongly supported his conviction. *See United States v. Al-Sadawi*, 432 F.3d 419, 425 (2d Cir. 2005) (quoting *United States v. Silverman*, 861 F.2d 571, 582 n. 4 (9th Cir.1988) ("[e]vidence that a defendant fled immediately after a crime was committed supports an inference that the flight was motivated by a consciousness of guilt of that crime."). The Appellate Division held "this was not a case where all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing to both guilt and innocence, and where the jury is left without basis, other than impermissible speculation, for its determination of either." (*See* ECF No. 5-21 at 2.) In fact, the Appellate Division further held the evidence against Petitioner was so overwhelming even if there had been error related to Ms. Levins' identification, it was harmless. (*Id.*) Therefore, the state court's decision that the showup identification was not unduly suggestive is entitled to deference.

Finally, Petitioner's reliance on *United States v. Wade*, 388 U.S. 218 (1967) and *Foster v. California*, 394 U.S. 440 (1969) to support his contention that the showup was unduly

19

suggestive, is misguided.  Petitioner's Amended Complaint does not articulate why the lower's court decision is contrary to the precedent set forth in *Wade*.  The court assumes that Petitioner takes issue with trial counsel's alleged failure to re-open the *Wade* hearing.

"Under New York law, the trial court has discretion to reopen a *Wade* hearing if additional pertinent facts are discovered that could not have been discovered with reasonable diligence before the *Wade* determination and that go to the issue of official suggestiveness such that they would materially affect or have affected the earlier *Wade* determination." *Lynn v. Bliden,* 443 F.3d 238, 249 (2d Cir.2006) (internal quotation marks and citations omitted).  Moreover, "[i]n prior habeas cases in which there were claims of ineffective assistance of counsel for failing to request a *Wade* hearing, [the Second Circuit] has demanded some showing of the likelihood for success at the hearing."  *Id.*  As already determined by the Appellate Division, there is nothing in the record to suggest that, had the *Wade* hearing been reopened due to new evidence, the court would have suppressed evidence related to Petitioner's arrest and/or identification due to improper police procedure.  *See, e.g., id.*  Furthermore, Petitioner cannot establish that he was prejudiced by trial counsel's failure to move to re-open the *Wade* hearing because, as previously discussed, the show-up

identification was not unduly suggestive thereby giving police probable cause to arrest Petitioner.

Petitioner appears to refer to *Foster v. California* to support his argument that "the Courts of this State should not condone such a suggestive practice [showup identifications] that has a dangerous propensity to create a false identification." (Am. Pet. at 1.)  In *Foster*, the Supreme Court held that an identification procedure is suggestive where it "in effect ... says to the witness 'This is the man.'"  *Foster v. California*, 394 U.S. 440, 443 (1969).  The Appellate Division explained "the identification testimony was not incredible as a matter of law" and even if the showup was suggestive, "this was not a case where all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing to both guilt and innocence."  (ECF No. 5-21 at 2.)  For the reasons stated, Petitioner's claim of a suggestive showup identification fails.

## II.   *Brady* **Determination**

On direct appeal, the Appellate Division found that there was no violation of *Brady v. Maryland*, 373 U.S. 83 (1963) because the failure to disclose, prior to the suppression hearing, that one of the complainants had seen him but failed to identify him during the first of two show-up procedures, would not have affected the ultimate issues in question.  (*See* ECF No.

21

5-21 at 1-2.)   Petitioner urges this court to overturn the
Appellate Division's finding that there was no *Brady* violation,
and that even though the Appellate Division acknowledged the
People violated C.P.L. 710.30, no recourse was given to
Petitioner.   (Am. Pet. at 7.)   The Respondent argues that the
court should uphold the Appellate Division's ruling.   (Opp. ¶
29.)

      In a criminal matter, the prosecution has the
obligation to disclose exculpatory evidence to the defendant.
*Brady v. Maryland*, 373 U.S. 83 (1967); *Giglio v. United States*,
405 U.S. 150, 154 (1972).   A *Brady* violation consists of three
factors: (1) "[t]he evidence at issue must be favorable to the
accused, either because it is exculpatory or impeaching;" (2)
"that evidence must have been suppressed by the State, either
willfully or inadvertently;" and (3) "prejudice must have
ensued."   *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).
Evidence is material and prejudice results if "there is a
reasonable probability that, had the evidence been disclosed to
the defense, the result of the proceeding would have been
different."   *United States v. Bagley*, 473 U.S. 667, 682 (1985).
Nondisclosure merits relief only if it "undermines confidence in
the outcome of the trial."   *Kyles v. Whitly*, 514 U.S. 419, 434
(1995) (citation and internal quotation marks omitted).

Construing the petition liberally, petitioner asserts a claim pursuant to *Brady* regarding the People's alleged failure to notify Petitioner of the first show-up procedure in violation of C.P.L. 710.30.  (Am. Pet. at 6-7.)  This claim is exhausted, procedurally barred, and meritless.  Petitioner already unsuccessfully raised this *Brady* claim in his direct appeal and in his CPL § 440.10 application, thus procedurally barring the claim.  Regardless, his claim is meritless because, as discussed above, the evidence of Petitioner's guilt, excluding the showup identification, was overwhelming, and there was no reasonable possibility "had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

## III.   Ineffective Assistance of Trial Counsel

Petitioner claims that he received ineffective assistance of trial counsel.  (Am. Pet. at. 23.)  He argues his trial counsel rendered deficient assistance that prejudiced the result of his trial chiefly by not moving to reopen the *Wade* hearing in addition to failing to adequately cross-examine several prosecution witnesses, failing to preserve meritorious arguments for appellate review, and an overall failure to employ basic principles of criminal law.  (*Id.*)

Petitioner already raised this claim in his direct appeal and in his C.P.L. § 440.10 application.  The Court

considers claims of ineffective assistance of counsel upon *de novo* review.  "In order to prevail, [petitioner] must first satisfy the prongs of *Strickland* on *de novo* review on the merits."  *Rosario v. Ercole*, 601 F.3d 118, 126 (2d Cir. 2010.) A court reviewing a claim for ineffective assistance of counsel on a writ of *habeas corpus* evaluates the two-part test.  To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate: (1) that his counsel's performance was so deficient that it was objectively unreasonable under professional standards prevailing at the time; and (2) that his counsel's deficient performance was prejudicial to the petitioner's case.  *Strickland v. Washington*, 466 U.S. 668, 687.

Petitioner may prove the first prong by showing that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  However, a reviewing court must be "highly deferential" and avoid "second guess[ing]" counsel's decisions so long as they are within the "wide range of reasonable professional assistance." *Id*. at 689. Petitioner can demonstrate prejudice by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  As explained above, Petitioner has failed to show that counsel's alleged error to not re-open the *Wade* hearing was prejudicial and, thus, his claim fails.  *See supra* at 19-20.

## IV.   Ineffective Assistance of Appellate Counsel

Petitioner claims that he received ineffective assistance of appellate counsel.  (Am. Pet. at 28.)  He argues that his appellate counsel rendered deficient assistance because he raised five claims, which were unpreserved for appellate review.  (*Id.* at 29.)  Further, Petitioner argues his appellate counsel challenged the conviction based, in part, on trial testimony despite New York law establishing the impermissibility of using trial testimony to challenge a trial court's determination on direct appeal.  (*Id.*)  This claim was raised in Petitioner's *coram nobis* petition, and on January 24, 2018, the Appellate Division denied the petition because the Petitioner "failed to establish that he was denied the effective assistance of appellate counsel."  (*See* ECF No. 5-28.)

The *Strickland* test applies to appellate as well as trial counsel; a petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance there was a reasonable probability that defendant's appeal would have been successful. *See, e.g.*, *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  Appellate counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while "winnowing out weaker arguments." *See*

*e.g.*, *Jones v. Barnes*, 463 U.S. 745, 751–53 (1983).  Reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Id.* at 754.  A habeas petitioner may establish constitutionally inadequate performance of appellate counsel only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533.

On direct appeal, appellate counsel argued that trial counsel was ineffective because he failed to: raise issues of perjury, raise a *Brady* violation, move for a mistrial, and move for dismissal of numerous counts in the indictment as multiplicitous. (*See* ECF No. 5-18 at 57.)  The claims that Petitioner now argues should have been raised on appeal are devoid of merit or unpreserved for appellate review. *Jones v. Barnes*, 463 U.S. 745 (1983) (holding that no "defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points").  In fact, the Supreme Court has "recognized the superior ability of trained counsel in the examination into the record, research of the law, and marshalling of arguments on [the appellant's] behalf" and noted that experienced appellate advocates understand "the importance of winnowing out weaker

26

arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52.

In sum, the Appellate Division's holding that Petitioner did not receive ineffective assistance of appellate counsel when his attorney did not raise all of the issues Petitioner sought to appeal was neither contrary to nor an unreasonable applicable of Supreme Court precedent. Petitioner's ineffective assistance of appellate counsel claim is accordingly denied.

## V.   Plea Bargaining

Petitioner claims that his trial counsel improperly failed to advise him a favorable plea offer and failed to consult with him before rejecting the offer.  (Am. Pet. at 40-41.)  Petitioner contends on or about February 13, 2013, the Hon. Tammy Robbins conveyed a plea offer to defense counsel in which the court offered an opportunity for Petitioner to plead guilty to the minimum sentence on the weapon charge, which would have been considerably less time than the previous offer of ten years.  (*Id.* at 41.)  Petitioner argues he would have accepted the plea offer and that his trial counsel rejected the offer without consulting Petitioner or putting the offer on the record.  (*Id.*)

"[A]s a general rule," failure to relay a plea offer constitutes ineffective assistance of counsel.  *Missouri v.*

*Frye*, 566 U.S. 134, 145 (2012).  Petitioner provided affidavits from his family and friend who said they witnessed the offer being made.  (*See* ECF No. 19-2. at 20-22.)  Petitioner has not produced a supporting statement from his former attorney, Andrew Monteleone, Esq., to whom the offer was allegedly made.  Mr. Monteleone declined to address the allegations in a signed affirmation against a former client, but Respondent asserts that Mr. Monteleone refuted the allegations in a conversation with the prosecutor's office.  (Opp. at 9.)  Petitioner has failed to produce any further evidence that the this considerably favorable plea offer was ever made.  Further, the Assistant District Attorney, Brian Lee, the prosecutor who tried the case, affirmed he would not have consented to such a plea offer, and that if such an offer had been discussed in his presence, he would have objected to it and insisted that the parties go on record.  (*Id*. at 10.)  Plea deals are left to the discretion of the prosecutor and, according to the prosecutor, Petitioner was not entitled to receive a plea bargain.  *Lafler v. Cooper*, 566 U.S. 156, 167, 132 S. Ct. 1376, 1387, 182 L. Ed. 2d 398 (2012); *United States v. Fernandez-Dilone*, 668 F. Supp. 245, 249 (S.D.N.Y. 1987).

Therefore, Petitioner has failed to meet his burden to demonstrate that the plea offer was made, and that if it was

made, that his counsel failed to properly advise him of the offer.

## CONCLUSION

For the forgoing reasons, the petition for a writ of *habeas corpus* is DENIED in its entirety. A certificate of appealability shall not issue because petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The clerk is respectfully directed to enter judgment in favor of respondent, close this case, and send a copy of this Memorandum and Order and the judgment to the petitioner at his last known address and note service on the docket.

**SO ORDERED.**

Dated:      July 22, 2021
            Brooklyn, New York

                              /s/
                              _____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge